J-S56016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.-S.H.A.S.-D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: H.A.S., FATHER | : | No. 1317 EDA 2017 |

Appeal from the Decree March 23, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No:  CP-51-DP-0001222-2015

BEFORE:   BOWES, STABILE, and PLATT[*], JJ.

MEMORANDUM BY STABILE, J.:                **FILED SEPTEMBER 18, 2017**

H.A.S. ("Father") appeals from the decree entered March 23, 2017, in the Court of Common Pleas of Philadelphia County, which involuntarily terminated his parental rights to his minor son, Y.-S.H.A.S.-D. ("Child"), born in January 2015.[1] After careful review, we affirm.

The record reveals that the Philadelphia Department of Human Services ("DHS") filed an application for order of protective custody with respect to Child on May 6, 2015.  In its application, DHS averred that it received a report regarding Mother in February 2015, alleging that she

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court entered a separate decree that same day, involuntarily terminating the parental rights of Child's mother, S.D. ("Mother").  Mother did not file a brief in connection with this appeal, nor did she file her own separate appeal.

tested positive for methadone and opiates at the time of Child's birth. Application for Order of Protective Custody, 5/6/15, at 1 (unpaginated). DHS averred that it received an additional report regarding Mother on May 2, 2015, alleging that she continued to suffer from drug abuse issues, and that she was failing to supervise Child and his sibling. *Id.* DHS further averred that Father was not available to care for Child at that time, because he was incarcerated. *Id.* The application for order of protective custody was granted, and Child was placed in the custody of DHS. Child remained in DHS custody pursuant to a shelter care order entered May 8, 2015, and the trial court adjudicated Child dependent on May 18, 2015.

On November 10, 2016, DHS filed a petition to involuntarily terminate Father's parental rights to Child. The trial court conducted a termination hearing on March 23, 2017. Following the hearing, the court entered a decree terminating Father's parental rights.[2] Father timely filed a notice of appeal on April 18, 2017, along with a concise statement of errors complained of on appeal.

Father now raises the following issues for our review.

> 1. Whether the Trial Court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(1)?

---

[2] Father filed a motion for reconsideration of the decree on March 29, 2017. However, Father filed the motion at Child's dependency docket number only, and not at Child's termination docket number. The trial court took no action on Father's motion.

2. Whether the Trial Court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(2)?

3. Whether the Trial Court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(b)?

Father's Brief at 5 (suggested answers and trial court answers omitted).[3]

We address these issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often

---

[3] In his notice of appeal, Father indicated that he also wished to appeal the order entered March 23, 2017, changing Child's permanency goal to adoption. However, Father did not include any claim regarding the goal change order in his concise statement. In addition, Father did not include any such claim in his statement of questions involved, or in the argument section of his brief. Accordingly, we conclude that Father waived any challenge to the goal change order, and we focus solely on the decree terminating his parental rights. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived.") (citations omitted); *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."').

have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(1) and (b), which provides as follows.

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\*\*\*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To meet the requirements of Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and

child" before moving on to analyze Section 2511(b). *Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (discussing *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975)).

Instantly, Father argues that the trial court erred by terminating his parental rights, because he did not receive any communication from the Community Umbrella Agency ("CUA") prior to the filing of the termination petition on November 10, 2016. Father's Brief at 12. Father argues that he did not know how to contact Child from prison, and that CUA never sent him a copy of his Single Case Plan ("SCP") objectives. *Id.*

The trial court found that Father refused or failed to perform parental duties on behalf of Child during the six months immediately preceding the filing of the termination petition. The court found that Father did not provide care for Child prior to his incarceration, and that he made no effort to contact Child in foster care. Trial Court Opinion, 5/26/17, at 13. In addition, the court found that Father did not contact CUA. *Id.*

Our review of the record supports the trial court's findings. During the termination hearing, the court heard the testimony of CUA case manager, Bahiyyah Ross. Ms. Ross testified that she was assigned to this case in February 2016, and that she contacted Father shortly thereafter by sending him a letter at SCI Frackville. N.T., 3/23/17, at 32-33. Ms. Ross testified that she sent multiple letters to Father between February 2016 and November 2016. *Id.* at 33. However, Father did not respond until January 2017. *Id.* at 37. In addition, Ms. Ross was not aware of Father having any contact with Child after his placement in foster care. *Id.* at 34. On cross-examination, Ms. Ross acknowledged that she did not send Father a copy of his SCP objectives, which were to "make his whereabouts known and to comply with CUA." *Id.* at 34, 38.

The trial court also heard the testimony of Father. Father testified that he has been incarcerated at SCI Frackville since January 2016, and that he has a "possible release date" of September 9, 2017. N.T., 3/23/17, at 41. Father testified that he did not know how to reach Child while he was

incarcerated. *Id.* at 40. Father testified that no social worker contacted him with instructions on how to reach Child prior to November 2016, and that he did not receive the February 2016 letter from Ms. Ross. *Id.* at 40-41.

Thus, the record confirms that Father refused or failed to perform parental duties during the six months immediately preceding the filing of the termination petition. It was within the trial court's discretion to accept the testimony of Ms. Ross, and to conclude that Father made no effort to contact CUA or Child during the relevant six months. While Father testified that he did not receive the February 2016 letter sent by Ms. Ross, and that he did not know how to contact Child, the court was free to reject this testimony as incredible. In addition, while Ms. Ross acknowledged that she did not send Father a copy of his SCP objectives, it is clear that this does not excuse Father's complete failure to take an interest in Child's life. We discern no abuse of discretion.

We next consider whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be

considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, Father argues that the trial court erred because he deserves a chance to be a part of Child's life. Father's Brief at 15. Father argues that, now that he is "aware of the social worker," he can send letters to Child and speak with him over the phone. *Id.*

The trial court concluded that terminating Father's parental rights would best serve Child's needs and welfare. The court found that Child has no bond with Father, and that Child looks to his foster parent for safety and comfort, and to meet his daily needs. Trial Court Opinion, 5/26/17, at 14-15. The court further found that terminating Father's parental rights would not cause Child to suffer irreparable harm. *Id.* at 15.

We again discern no abuse of discretion. Ms. Ross testified that Father was incarcerated at the time Child was removed from Mother's care in May 2015. N.T., 3/23/17, at 32. In addition, as discussed above, she was not

aware of Father having any contact with Child since that time. *Id.* at 34. Ms. Ross did not believe that Child has any bond with Father, or that Child would suffer irreparable harm if Father's parental rights were terminated. *Id.* at 35. Ms. Ross confirmed that a pre-adoptive resource has been identified for Child, and that the resource's home is "in the process of being certified[.]" *Id.* at 16.

Thus, the record confirms that Child has no bond with Father. Indeed, Child has no relationship with Father at all, as he was placed in foster care when he was only a few months old, and has had no contact with Father since that time. It was within the trial court's discretion to conclude that Child's life should not be put on hold any longer, and that his needs and welfare would best be served by terminating Father's parental rights, thereby freeing him for adoption.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Child. Therefore, we affirm the court's March 23, 2017 decree.

Decree affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2017

- 10 -